**TEOFILO R. ALMESTICA, Plaintiff**

v.

**DEPARTMENT OF PUBLIC SAFETY, et al., Defendants**

Civil No. 475-1972

District Court of the Virgin Islands

Div. of St. Croix

April 2, 1973

NICHOLS & SILVERLIGHT, ESQS., Christiansted, St. Croix, V.I., *for plaintiff*

WARREN PULNER, ESQ., Assistant Attorney General, St. Thomas, V.I., *for defendant*

YOUNG, *Judge*

### MEMORANDUM OPINION AND ORDER

The Court in this action on cross motions for summary judgment must resolve a two part question. First, does the Commissioner of the Department of Public Safety have the legal authority to establish a "Police Review Board?" And second, if the "Board" is legally created, does it have the power to compel plaintiff, a lieutenant in the Police Division, to appear before it within one week at a hearing on alleged violations of Police Rules and Regulations? There are no disputed material issues of fact concerning the creation of the "Board," the purported Police Rules and Regulations and the Request to Appear. Hence, the parties have stipulated that this case is ripe for disposition on their cross motions for summary judgment under Rule 56. For the reasons explained below I have concluded that the "Police Review Board" has not been legally established according to law and that attempts at this time to compel appearances of employees before it are ineffectual.

The facts agreed upon and which provide the basis for the cross summary judgment motions are as follows: Plaintiff, Lieutenant Almestica, received a written notification on August 25, 1972 requiring him to appear within one week before the Police Review Board to answer charges of alleged violations of the Police Rules and Regulations.[1] The day before the scheduled Board hearing, this Court issued a temporary restraining order restraining the Department of Public Safety and the other named defendants from conducting the hearing. By stipulation of counsel, the restraining order has been kept in effect pending the final determination hereof.

Plaintiff argues that the "Review Board" is of dubious legal parentage, having been born of the Commissioner's exercise of authority under 3 V.I.C. 258(a), which authorizes him to prescribe rules and regulations governing the conduct of the Department's officers and personnel.[2] I have been advised that prior to the date of the restraining order, the board was a functioning entity, that it operated chiefly as an investigatory and advisory board, that it has, in the past, made findings and proffered recommendations to the Commissioner as to whether he should suspend, demote or dismiss personnel employed by the Department. The ultimate decision as to any course of disciplinary action to be taken is, however, statutorily vested solely in the Commissioner, and that determination is re-

---

[1] In the letter, plaintiff is charged with "fighting or quarreling among members of the department" and "failure to patrol post properly, or failure to respond to radio call." Those violations are enumerated in Article I § 9 and Article IV § 29 of the Rules and Regulations of the Police Division. Under Article I § 9, it is possible that plaintiff can receive disciplinary punishment running the gambit from a five-day suspension to a dismissal. Under Article IV § 29, he stands the risk of incurring a suspension of from 2 to 20 days.

[2] The pertinent part of the section reads:
The Commissioner may prescribe rules and regulations, not inconsistent with the law or other regulations authorized by law for the proper administration of the Department, the conduct of its officers and other personnel. . . .

viewable upon recourse to the Government Employees Service Commission. 3 V.I.C. § 530(a).

## I

 My decision herein may better be understood with a brief review of the relationship of the "Police Review Board" to the procedures afforded under the personnel merit system. While the creation of the review board may raise some questions as to remedies available to discharged, demoted, or suspended employees, this decision restricts itself to the two narrower questions mentioned at the outset.

A noted legal scholar has written to the effect that:

> There is much that the police need. They have too long and too often been among the step-children of our society, denied interest and attention to which the importance of their work entitled them .... We are quite content to think about them not at all until some crisis arose when we insisted that they perform like supermen, after which we reverted to our former attitudes of massive disinterest and mild distaste.

McGowan, Rule-Making and the Police, 70 Mich. L. Rev. 663 (1972). In the past few years we have witnessed repeated attempts and innovations to upgrade the quality of our police force. Many of these innovations have taken the form of internal rules, promulgated by the Department of Public Safety, for the sanctioning of police behavior when it departs from the norms of acceptable conduct. See Disciplinary Code as found within the Rules and Regulations of the Police Division of the Department of Public Safety, approved by Governor Paiewonsky on September 13, 1966. Because the police function is so central to the chances of improving our criminal justice system, reforms which have quickened the establishment of regularized disciplinary procedures within the Department are not only desirable but also commendable. To this end,

it is evident that certain legal and administrative resources should be accorded to the Department in its endeavor to investigate and sanction misconduct. Yet whether the Commissioner or anyone else has the authority to establish a so-called "Police Review Board" must be determined by reference to the legislative grants of authority. In this regard, two statutes must be construed: 3 V.I.C. § 258 (a),[3] which grants to the Commissioner authority to prescribe rules for conduct and internal administrative management, and 23 V.I.C. § 9(b),[4] which delegates to the Police and Fire Commission authority of the same degree. The Commissioner's rule-making authority is qualified by the proviso that he not formulate any rule which is inconsistent with other lawful regulations. Moreover, his grant of authority is permissive and not compulsory, for it does not appear to go beyond a rule-making power regarding conduct. On the other hand, the legislative command to the Commission to make rules and regulations is mandatory. The charge to provide the "means and methods" to enforce the disciplinary rules is also mandatory. Therefore, in terms of priority, the Commission exercises the higher form of rule-making power and, the Commissioner's rule-making authority is subordinate. The Commission, and not the Commissioner, has the power to provide the administrative machinery for the enforcement of a disciplinary code. Since the Police Rules and Regulations were promulgated by the Commission under 23 V.I.C. § 9(b), only the Commission—and not the Commissioner —is authorized to establish a board to implement the rules and to investigate their alleged violations. Therefore, for the Police Review Board to be properly constituted, it

---

[3] Id.

[4] The Commission "shall formulate and promulgate rules and regulations governing the conduct of members of the police force, and shall provide means and methods by which they may be enforced. . . . These rules and regulations are subject to the approval of the Governor."

must, at a minimum, be established pursuant to the provisions of 23 V.I.C. § 9(b).[5] To the extent that the Police Review Board is meant to take the place of the Commission, its formulation contravenes the statute.

## II

█ Having decided that the Commissioner lacks the authority to establish the Police Review Board, I can more rapidly dispose of the second inquiry. Until the review board is properly established in compliance with the statute, the board lacks authority to compel the appearance of a police officer for purposes of conducting a disciplinary hearing. Whether the board, once properly established, can compel an employee to attend a hearing is somewhat academic. The answer depends largely on whether the employee's due process rights have been properly observed. The Supreme Court has not ruled directly on the question of what effect the failure to appear and testify would have on the employee's status. Garrity v. New Jersey, 385 U.S. 493 (1967). However, the protections of the Fifth Amendment apparently do not go so far as to cover a public employee's right to remain silent when being questioned by his employer about matters which relate directly to the performance of his duties. Spevack v. Klein, 385 U.S. 519 (1967) (Fortas, J., concurring). But as presently functioning, it is inappropriate for this ad hoc "investigative" committee to exercise what is tantamount to a subpoena power.

██ It must be remembered, however, that the Commissioner is the only official who may impose disciplinary sanctions such as suspension, dismissal or demotion. 3 V.I.C. 530(a). Therefore, in any instance the powers of the board must be limited to those of an investigatory nature.

---

[5] It is obvious that the board could also be set up by statute through an act of the Legislature. Perhaps this method of establishing the board is the more desirable, but I need not rule on the question.

Its duties and functions of necessity must be narrowly, yet precisely defined.[6] Likewise, the membership of the board should be fixed.[7] It must also be remembered that the members of the police force are included in and governed by the personnel merit system. 3 V.I.C. § 451 et seq. Therefore, the actions of a Police Review Board cannot be used to circumvent the rights to which policemen, as public employees, are entitled through that system. See, e.g., 3 V.I.C. § 530(a).

### ORDER

For the reasons set forth in the foregoing Memorandum, it is hereby ORDERED:

1. Defendants' motion for summary judgment is denied.
2. Plaintiff's motion for summary judgment is granted.
3. The functions of the Police Review Board are suspended and stayed until such time that the Police Review Board shall be established according to the Code of Laws of the Virgin Islands.

---

[6] As Oliver Wendell Holmes once observed it would appear that "the chief aim of man is to frame general propositions and . . . no general proposition is worth a damn." 2 Holmes-Pollack Letters 59 (M. Howe ed. 1941).

[7] Indications are that both the number and identity of persons sitting on the board varies. Upon what basis these variations are permitted I am not advised.